*Attorney Grievance Commission of Maryland v. Mira Sugarman Burghardt*, No. 15, September Term, 2014

**Attorney Grievance—Reciprocal Action—Misappropriation/Misrepresentation—Indefinite Suspension**

An attorney, admitted in Maryland, Massachusetts, and the District of Columbia, was disciplined in Massachusetts (where the misconduct occurred) and then in the District of Columbia for seeking, over a 4 month period, reimbursement from her employing law firm for expenses that were personal in nature and for which she was not entitled to reimbursement, and for submitting falsified invoices in support of the same. In Massachusetts, the attorney was suspended for one year and one day. In the District of Columbia, the attorney was suspended, on a reciprocal basis, for a year and a day, *nunc pro tunc* as of 6 December 2013, with reinstatement contingent on a showing of fitness. Her misconduct warrants in Maryland a reciprocal sanction of an indefinite suspension, with the right to apply for reinstatement no sooner than when she is readmitted to practice in Massachusetts and the District of Columbia.

Argued: 8 January 2015

IN THE COURT OF APPEALS OF
MARYLAND

Misc. Docket AG No. 15

September Term, 2014

---

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

MIRA SUGARMAN BURGHARDT

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
McDonald,
Watts,
Raker, Irma S. (Retired, Specially
　　　Assigned),

JJ.

---

Opinion by Harrell, J.

---

Filed:  March 4, 2015

I. STATEMENT OF THE CASE & PROCEDURAL HISTORY

Mira Sugarman Burghardt ("Respondent" or "Burghardt"), who was admitted to the Bar of this Court on 17 December 2002, is the subject of this reciprocal disciplinary action. Respondent was admitted also to the Bars of the Commonwealth of Massachusetts and the District of Columbia. At the time of the misconduct underlying the initial sanction imposed on Burghardt, she was practicing in Massachusetts. The Supreme Judicial Court for Suffolk County, Massachusetts, by an Order of Term Suspension in *In re: Mira S. Burghardt*, No. BD-2013-096, entered 9 October 2013, suspended Respondent from the practice of law in Massachusetts for a period of one year and one day, effective thirty days after the date of entry of the Order. By a Per Curiam Order filed 20 February 2014, the District of Columbia Court of Appeals suspended Respondent, on a reciprocal basis, for a period of one year and one day, *nunc pro tunc* to 6 December 2013, with reinstatement contingent on a showing of fitness.

Pursuant to Maryland Rules 16-751 and 16-773, the Attorney Grievance Commission of Maryland ("Petitioner" or "the Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("PDRA") on 29 May 2014 against Burghardt based on her misconduct in Massachusetts. Bar Counsel attached to its Petition a certified copy of the 9 October 2013 Order of Term Suspension of the Supreme Judicial Court for Suffolk County in Massachusetts, a Summary of the Massachusetts disciplinary action (the "Summary") compiled by the Board of Bar Overseers (based on the record filed with the Supreme Judicial Court), and a copy of the 20 February 2014 Per Curiam Order of the District of Columbia Court of Appeals.

The Summary states the following:

From about May 2008 to September 2011, Respondent was employed by a law firm in Boston, Massachusetts. Between about June 2011 to September 2011, Respondent submitted requests to the firm for reimbursement of expenses totaling approximately $6,300, which the firm then paid. These expenses were personal and Respondent was not entitled to reimbursement, but Respondent intentionally misrepresented in the requests that the expenses were incurred in connection with firm business. Respondent supported the requests with falsified invoices.

On 21 September 2011, the firm questioned Respondent about the expenses, and Respondent acknowledged that the charges were for personal expenses. She was discharged from employment that day. Respondent reimbursed the firm for the payments she wrongfully received.

On 28 August 2013, bar counsel filed a petition for discipline alleging that Respondent's conduct in submitting false expense reports to the firm and in fabricating documents to support the false expense charges violated Mass. R. Prof. C. 8.4(c) and (h).[1] That same day, Respondent filed an answer admitting to the facts and rule violations alleged, and the parties filed a stipulation asking that the Board of Bar Overseers recommend a suspension of one year and one day.

On 23 September 2013, the Board of Bar Overseers voted to accept the parties' stipulation. The board filed an information with the Supreme Judicial Court of Suffolk County. On 9 October 2013, the county court (Gants, J.)

---

[1] The text of the relevant Massachusetts Rule is as follows:

It is professional misconduct for a lawyer to:

    *            *            *

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or]

    *            *            *

(h) engage in any other conduct that adversely reflects on his or her fitness to practice law.

entered an order suspending Respondent for one year and one day effective thirty days after entry of the order.

(minor alterations added).

This Court issued a Show Cause Order on 29 July 2014. Bar Counsel, in its Response to the Show Cause Order, argued that Respondent's misconduct warrants disbarment (which Bar Counsel concedes constitutes "substantially different discipline," within the meaning of Maryland Rule 16-773(e)(4)[2]), based on this Court's imposition of disbarment for dishonest conduct arguably similar to that committed by Burghardt. Respondent, in her Response, maintained that the imposition of reciprocal discipline ("corresponding discipline" to that imposed in the other jurisdictions) is appropriate as her misconduct did not involve client funds or accounts, and because she cooperated fully with the disciplinary authorities of Massachusetts, the District of Columbia, and Maryland in the course of their investigations and proceedings in these matters. By an Order dated 24 September 2014, this Court, in accordance with Maryland Rule 16-773(d) (providing for interim suspension), suspended Respondent, effective immediately, from

---

[2] Maryland Rule 16-773(e)(3)–(4) provides:

> Exceptional circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
>
>        *           *           *
>
> (3) the imposition of corresponding discipline would result in grave injustice; [or]
> (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State[.]

3

the practice of law in this State, pending further action of this Court. Oral arguments were set for 8 January 2015. In a written notice filed on 29 December 2014, Respondent advised us that neither she nor any representative would be in attendance, and reiterated her request that we impose for her misconduct reciprocal discipline in the same manner as Massachusetts and the District of Columbia, i.e., effectively a suspension of one year and one day.

## II. SANCTION

In reciprocal discipline cases, pursuant to Rule 16-773(g), "the factual findings of the originating jurisdiction are treated ordinarily as conclusive evidence of an attorney's misconduct." *Attorney Grievance Commission v. Litman*, 440 Md. 205, 207, 101 A.3d 1050, 1052 (2014); *see Attorney Grievance Commission v. Kourtesis*, 437 Md. 436, 445, 87 A.3d 1231, 1235–36 (2014); *Attorney Grievance Commission v. Katz*, 429 Md. 308, 315–16, 55 A.3d 909, 913 (2012). We do so in the present case. When imposing a sanction, we have the "discretion to impose a discipline consistent with the sister jurisdiction's factual findings and conclusions, or to order a different or more serious alternative based on the existence of 'exceptional circumstances' under Rule 16-773(e)." *Katz*, 429 Md. at 316, 55 A.3d at 913 (footnote omitted). Rule 16-773(e) provides that the Court "shall not" order reciprocal discipline, i.e., corresponding discipline, in the event that either party demonstrates, by clear and convincing evidence, that an "[e]xceptional circumstance[]" exists. Exceptional circumstances include, among others, the factor relied upon here by Bar Counsel: "the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State."

4

Rule 16-773(e)(4); *see Attorney Grievance Commission v. Tun*, 428 Md. 235, 246, 51 A.3d 565, 572 (2012) ("[W]e conclude in the present case that 'exceptional circumstances,' as meant in Maryland Rule 16-773(e), exist. [The respondent's] conduct, had it occurred in Maryland, would warrant a different sanction before this Court than that imposed by the D.C. Court of Appeals."). Rule 16-773(f) does not require us to impose identical discipline; rather, the Court "has the long-established duty to impose discipline that is consistent with our attorney discipline jurisprudence by assessing, independently, the propriety of the sanction imposed by a sister jurisdiction, as well as the sanction recommended by Bar Counsel." *Katz*, 429 Md. at 317, 55 A.3d at 914; *see Attorney Grievance Commission v. Vanderslice*, 435 Md. 295, 302, 77 A.3d 1100, 1104 (2013); *Attorney Grievance Commission v. Cafferty*, 376 Md. 700, 727, 831 A.2d 1042, 1058 (2003). Accordingly, the sanction to be imposed depends "not only on the decision of the sister jurisdiction, but also on the specific facts of each case, balanced against Maryland precedent." *Katz*, 429 Md. at 317, 55 A.3d at 914.

It is a well-established principle in reciprocal discipline cases that "we are prone or inclined, but not required to, impose the same sanction the original jurisdiction imposed." *Attorney Grievance Commission v. Gordon*, 413 Md. 46, 55, 991 A.2d 51, 56 (2010); *see Attorney Grievance Commission v. Whitehead*, 390 Md. 663, 671, 890 A.2d 751, 756 (2006); *Attorney Grievance Commission v. Weiss*, 389 Md. 531, 547, 886 A.2d 606, 615 (2005) ("The explicit reluctance of the Court to adopt a blanket rule of reciprocity provides that we must look at each case individually and decide whether to deviate from the original jurisdiction's sanction . . . ."). If the purpose of the originating

5

jurisdiction's sanction is congruent with ours, we impose generally corresponding discipline. *Gordon*, 413 Md. at 56, 991 A.2d at 57. As we noted in *Gordon*, "[o]ur purpose in attorney discipline cases is the protection of the public, rather than the punishment of the erring attorney," and oftentimes, most jurisdictions have the same purpose. *Id.*; *see Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 388, 773 A.2d 463, 470 (2001). We must consider first, however, "what sanction a lawyer in Maryland could expect in response to similar conduct, were it to have occurred in Maryland." *Gordon*, 413 Md. at 56, 991 A.2d at 57; *see Vanderslice*, 435 Md. at 302, 77 A.3d at 1104; *Weiss*, 389 Md. at 548, 886 A.2d at 616.

Petitioner directs our attention to several cases in support of its contention that disbarment is the appropriate sanction in this matter, including the oft-cited *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 773 A.2d 463. In *Vanderlinde*, we disbarred an attorney who, while employed other than as a lawyer, embezzled, stole, or misappropriated $3,880.67 from her employer, using the money for personal purposes. *Vanderlinde*, 364 Md. at 381, 773 A.2d at 465–66. She attributed her deviant conduct to the pressures of her life and depression at the time. *Id.* Addressing her depression and other proposed mitigating and extenuating circumstances, we concluded that:

> [I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the [MLRPC].

6

*Vanderlinde*, 364 Md. at 413–14, 773 A.2d at 485. We disbarred Vanderlinde, and suggested broadly that "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct." *Vanderlinde*, 364 Md. at 418, 773 A.2d at 488.

Nine years after *Vanderlinde* was decided, we had occasion in *Attorney Grievance Commission v. Palmer*, 417 Md. 185, 207–12, 9 A.3d 37, 50–53 (2010), to review and elaborate in great detail upon the decision in *Vanderlinde*. In *Palmer*, an associate of a law firm, who was attempting to make himself appear more attractive for partnership consideration, misappropriated repeatedly and intentionally client funds (unearned fees) by causing them to be transferred from the firm's escrow account to the firm's general account, and then assigning one-third of those funds as income generated by him, in order to foster the illusion that he was bringing in more income to the firm than he earned justifiably by dint of actual effort. *Palmer*, 417 Md. at 206, 9 A.3d at 50. We noted in our opinion in *Palmer* that *Vanderlinde*'s repeated usage of phrases like "similar problems" and "such matters" (referring to Vanderlinde's claims of pressures of life and the impairment of her mental faculties as mitigators) "informs that (1) the *Vanderlinde* survey of mitigation-of-sanction jurisprudence was limited purposefully to those cases dealing with mental disability; and, more importantly, (2) *Vanderlinde* intended its holding to apply only to situations where similar mental disability mitigation defenses are offered by a respondent." *Palmer*, 417 Md. at 210, 9 A.3d at 52.

In *Palmer* we noted also that *Vanderlinde* should be read in light of *Attorney Grievance Commission v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 628–29 (2002). *Palmer*, 417 Md. at 210–11, 9 A.3d at 52–53. Both *Vanderlinde* and *Lane* were authored

7

for the Court by Judge Cathell, with *Lane* filed only a year after *Vanderlinde*. *Lane* clarified that *Vanderlinde* "was not intended to apply to all cases involving intentional dishonesty, intentional misappropriation, fraud, stealing, and serious criminal conduct . . . ." *Id.* Judge Cathell noted specifically:

> We did not apply *Vanderlinde* as a bright-line rule, but applied the facts and circumstances of that case to determine the appropriate sanction. What *Vanderlinde* holds is that "ordinarily" disbarment will be the appropriate sanction when dishonesty is involved, however, we must still examine the facts, circumstances, and mitigation in each case.

*Lane*, 367 Md. at 647, 790 A.2d at 628–29. As clarified in *Lane*, and stated explicitly in *Palmer*:

> [T]he *Vanderlinde* court believed that it was imposing a bright-line rule; but, as clarified in *Lane*, the bright-line rule should be understood to apply only to "the facts and circumstances of that case"—i.e., cases of misconduct involving intentional misappropriation, intentional dishonesty, fraud, stealing, and serious criminal offenses where mental disability is offered as mitigation of the normal sanction of disbarment. This conclusion is consistent with the long-chanted mantra that the appropriate sanction in an attorney-discipline matter "'depends on the facts and circumstances of each case.'"

*Palmer*, 417 Md. at 211, 9 A.3d at 52–53 (quoting *Attorney Grievance Commission v. Nussbaum*, 401 Md. 612, 642–43, 934 A.2d 1, 19 (2007) (quoting *Attorney Grievance Commission v. Zuckerman*, 386 Md. 341, 375, 872 A.2d 693, 713 (2005))).

The *Palmer* Court disbarred ultimately that respondent, concluding that the serious nature of his various violations of the MLRPC, Maryland Rules, and Maryland Code (MLRPC 1.1, 1.15(a) and (c), 8.4(b), (c), and (d), Maryland Rule 16-609, and Maryland

8

Code (2000, 2010 Repl. Vol.), Business Occupations & Professions Article, § 10-306), were not overcome sufficiently by any mitigating factors so as to warrant an indefinite suspension or some other lesser sanction.[3] *Palmer*, 417 Md. at 214–16, 9 A.3d at 55.

Without a doubt, we disbar many attorneys who misappropriate client or third person funds. *See Vanderslice*, 435 Md. at 299, 303, 77 A.3d at 1103, 1105 (disbarring an attorney who committed intentional theft eight times in ten months by misappropriating $1,780 from the firm of which he was a partner); *Attorney Grievance Commission v. Nothstein*, 300 Md. 667, 669–70, 480 A.2d 807, 808–09 (1984) (disbarring an attorney who obtained in excess of $40,000 from his law firm by submitting false expense claims, where some charges were assessed against clients and others against fictitious files). Post-*Vanderlinde*, however, not every respondent who misappropriates funds through misrepresentation was disbarred. Why such cases resulted in a sanction deemed by many to be "lesser" than disbarment is what we turn to next.

---

[3] We noted, however, that disbarment need not be necessarily the end of Palmer's legal career:

> This is not to say, however, that these mitigating factors become irrelevant should Respondent seek to be readmitted to the Bar. While we recognize the stigma that attaches to the sanction of disbarment, practically speaking, a disbarred attorney, just like one assessed with an open-ended indefinite suspension, may reapply for admission at any time after imposition.

*Attorney Grievance Commission v. Palmer*, 417 Md. 185, 215 n.16, 9 A.3d 37, 55 n.16 (2010) (citations omitted).

9

In *Attorney Grievance Commission v. Stillwell*, 434 Md. 69, 73 A.3d 243 (2013) (hereinafter "*Stillwell I*"), a reciprocal discipline matter, the respondent violated the District of Columbia equivalents of MLRPC 8.4(c) and 1.7(a). *Stillwell I*, 434 Md. at 71, 73 A.3d at 244. Some of the misconduct underlying his violations consisted of Stillwell misrepresenting on certain publications his status at the law firm where he was employed (saying that he was senior counsel when he was an associate); making on firm letterhead a false employment verification on behalf of an employee of the firm who was his friend; working outside of the law firm, a violation of the firm's written policies; and, asserting a position on behalf of his private clients that was adverse to a position taken by a client of his firm, without first obtaining the informed consent of all parties. *Stillwell I*, 434 Md. at 72, 73 A.3d at 244. Stillwell's misconduct most pertinent to the case at bar, however, consisted of charging improperly personal expenses (including as much as $5,000 worth of cell phone and text message charges) to various firm pro bono accounts and to a client for whom the respondent had performed no legal work. *Stillwell I*, 434 Md. at 75, 73 A.3d at 246. We noted aggravating factors, including the prejudice suffered by his law firm, which absorbed some of his personal expenses incurred under false pretenses. *Stillwell I*, 434 Md. at 72, 73 A.3d at 245. We considered also various mitigating factors, including the fact that he admitted that he engaged in the misconduct, took full responsibility for his actions, reimbursed the firm for the amount that it sought, and had no prior disciplinary history. *Stillwell I*, 434 Md. at 72, 87, 73 A.3d at 245, 254. We

concluded ultimately that a six-month suspension from the practice of law was appropriate. *Stillwell I*, 434 Md. at 87, 73 A.3d at 254.[4]

In *Attorney Grievance Commission v. Sweitzer*, 395 Md. 586, 911 A.2d 440 (2006), the respondent committed several acts of misconduct, one of which involved two misrepresentations. First, Sweitzer attempted to avoid payment of a vehicle sales tax and inspection fee by presenting a Gift Certification Form to the Maryland Vehicle Administration for a vehicle that he purchased at auction. *Sweitzer*, 395 Md. at 597, 600, 911 A.2d at 447, 448. The same act incorporated a second misrepresentation, the respondent having misrepresented also that he had his former wife's authority to execute the form on her behalf. *Id.* In addition, he failed to conclude a "very simple legal transaction" on behalf of a client by failing to verify that a deed was recorded properly. *Sweitzer*, 395 Md. at 596–97, 911 A.2d at 446. We noted that, despite "the relatively modest nature of the financial benefit that Respondent could have gained [from avoiding the sales tax], his conduct, intentionally deceitful and motivated by pecuniary interest, was egregious." *Sweitzer*, 395 Md. at 603, 911 A.2d at 450. We considered, as mitigating factors, the fact that he had no disciplinary history and the acts of misconduct did not constitute a pattern, occurring as they did two years apart. *Sweitzer*, 395 Md. at 605–06, 911 A.2d at 451–52. Sweitzer was suspended indefinitely. *Id.*

---

[4] In a subsequent attorney discipline matter decided one month later in 2013, the Court suspended indefinitely Stillwell, with the right to apply for reinstatement no sooner than 60 days. *Attorney Grievance Commission v. Stillwell*, 434 Md. 248, 274, 74 A.3d 728, 743 (2013) (hereinafter "*Stillwell II*"). The basis for that disciplinary action was Stillwell's violations of MLRPC 1.3, 1.4, 1.15, 1.16, 8.4(a), and Maryland Rule § 16-603 in matters unrelated to *Stillwell I*. *Stillwell II*, 434 Md. at 251–59, 74 A.3d at 730–34.

A different result obtained, however, for the respondent in *Attorney Grievance Commission v. Levin*, 438 Md. 211, 91 A.3d. 1101 (2014), who we disbarred after he engaged in dishonest and deceitful conduct for personal gain through a systemic web of falsehoods. The respondent misled his firm as to the amount of work he actually did so that he would receive a higher salary. *Levin*, 438 Md. at 215–16, 91 A.3d. at 1103–04. He made false representations to the assistant managing director of the firm regarding the number of cases he was handling, the number of legitimate bills he sent to clients, and his expectations of payment from clients. *Id.* In furtherance of those misrepresentations, he created fictitious clients and drafted supporting paperwork. *Id.* After he left the firm, the assistant managing director discovered a discrepancy between his salary and his actual earnings, the difference being $151,191.17. *Id.* That attorney was disbarred. *Levin*, 438 Md. at 232, 91 A.3d. at 1113.

We conclude that, on balance, the present matter more closely resembles *Stillwell I* and *Sweitzer*. Unlike the attorney in *Levin*, Respondent's misappropriations were limited in amount, scope, and time, and were supported by a less extensive network of lies and deceit. Respondent, much like the attorney in *Stillwell I*, submitted to her firm invoices for personal expenses. Unlike the attorney in *Stillwell I*, she did not compound that violation by representing inaccurately her status at the law firm, making additional false representations, or committing any of the other rule violations that the attorney in *Stillwell I* committed. Like the attorney in *Sweitzer*, Respondent's misconduct was deceitful and motivated by pecuniary interest. As observed earlier here, the attorney in *Stillwell I* was suspended for six months from the practice of law, *Stillwell I*, 434 Md. at

12

87, 73 A.3d at 254, and the attorney in *Sweitzer* was suspended indefinitely. *Sweitzer*, 395 Md. at 598, 911 A.2d at 447.

In triangulating on the appropriate sanction for Respondent's misconduct, we bear in mind also any applicable aggravating and mitigating factors. *See Attorney Grievance Commission v. Thomas*, 440 Md. 523, 557, 103 A.3d 629, 649 (2014); *Attorney Grievance Commission v. Kremer*, 432 Md. 325, 339, 68 A.3d 862, 870 (2013); *see also Attorney Grievance Commission v. Brown*, 426 Md. 298, 326, 44 A.3d 344, 361 (2012). Respondent's dishonest and selfish motive in misappropriating funds from her former law firm and her pattern of submitting requests for reimbursement with falsified invoices from June through September of 2011 aggravate her circumstances. We consider also various obvious mitigating factors, as reflected in the Summary provided by the Massachusetts Board of Bar Overseers.[5] Specifically, we note that Respondent does not

---

[5] In her Response to the PDRA, Respondent suggested:

> 5. Certain contextual facts involved in the conduct are not included in the official records of Massachusetts and the District of Columbia. The conduct occurred during a very short time period of weeks in the Summer [sic] of 2011 during a time of great personal stress and family issues, after an unblemished career providing excellent client service and upholding all ethical tenets of the practice of law. I am deeply remorseful of my conduct and received counseling following the conduct to address these personal issues.

We decline to deem this averment a mitigating factor. The foregoing information was not found as fact by the originating jurisdiction and was conceded by Burghardt as not being "included in the official records." *See Attorney Grievance Commission v. Litman*, 440 Md. 205, 207, 101 A.3d 1050, 1052 (2014) ("In reciprocal discipline cases, pursuant to Rule 16-773(g), the factual findings of the originating jurisdiction are treated

(Continued. . .)

13

appear to have a prior disciplinary record, and all information presented to us suggests that she cooperated in the Massachusetts and District of Columbia disciplinary processes, as well as in the current proceeding. She also admitted, when confronted, that the charges were for personal expenses, and reimbursed the firm for those payments she received wrongfully.

In view of the sanctions incurred by the attorneys in *Stillwell I* and *Sweitzer*, and keeping in mind our general inclination to impose a corresponding sanction to that imposed by Massachusetts and the District of Columbia, *see Gordon*, 413 Md. at 55, 991 A.2d at 56, we conclude that the appropriate reciprocal sanction in Maryland is an indefinite suspension, with the right to apply for reinstatement no sooner than when Respondent is readmitted to practice in Massachusetts and the District of Columbia.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY**

---

(. . . continued)
ordinarily as conclusive evidence of an attorney's misconduct."); *Attorney Grievance Commission v. Kourtesis*, 437 Md. 436, 445, 87 A.3d 1231, 1235 (2014); *Attorney Grievance Commission v. Katz*, 429 Md. 308, 315, 55 A.3d 909, 913 (2012). As noted above, while final adjudications in disciplinary proceedings in other courts that an attorney has been guilty of professional misconduct are considered conclusive evidence pursuant to Maryland Rule 16-773(g), the same rule "does not . . . preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed." The foregoing constitutes the entirety of the information provided to us regarding Respondent's time of "great personal stress and family issues." Pursuant to *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001), as discussed in *Attorney Grievance Commission v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 628–29 (2002), and *Palmer*, 417 Md. at 207–12, 9 A.3d at 50–53, Respondent's personal issues do not satisfy the high bar of the *Vanderlinde* test. *See Vanderlinde*, 364 Md. at 413–14, 773 A.2d at 485; *Palmer*, 417 Md. at 210, 9 A.3d at 52.

**THE CLERK OF THE COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MIRA SUGARMAN BURGHARDT.**

15